## Farmers' Bank of Bucks Co. *v.* McKee.

In trover, the plaintiff must show that he is entitled to the property by a complete performance of his contract of purchase.

A. agreed to employ B. to carry coal in boats, which were delivered to him; certain portions of the freight were to be retained until they equalled the value of the boats, when they were to be transferred to B. In trover against the purchaser of A.'s interest, B. is not entitled to recover to the extent of the payments made, if they are less than the price. *Aliter*—Had the price been paid according to the agreement, or in any other way.

A creditor of the vendor of a chattel, of which it was uncertain that the price was fully paid, levied and sold; profits which might have been made by the use of the chattel, or loss from incapacity to employ men and horses, by reason of its detention, are speculative, and cannot be estimated, there being no other circumstances showing oppression, or calling for vindictive damages.

A book of entries, which would be evidence against the owner of a chattel, will also be evidence against a purchaser of his right at sheriff's sale.

To make the agreement by the president of a private corporation evidence, it should be shown to be within the scope of his authority.

Error to the Common Pleas of Bucks county.

McKee brought trover for seven canal boats. He proved they were sold by the sheriff on the 1st October, 1842, as the property of the Sugar-Loaf Coal Company, and purchased, and taken possession of by Taylor, as the agent of the bank; notice of title having been given at the sale. He then proved he had purchased from the company, and that their agent had agreed to credit the debt due him on his account for the boats.

Defendants having shown their title under the execution, proved the articles between the company and McKee, dated August 5th, 1841, by which the former agreed to employ him to boat coal during the season at certain rates; by the second clause it was agreed, "That $10 of the freight money of each trip should be retained by the company; and when that amount should equal the cost of the boats, viz., $375 each, with interest, then they should be transferred to him." One-tenth of the freight money was also to be left with the company until January 1st, to be forfeited to the use of the company, in case he failed in his agreement. In case he was detained at the shipping port, waiting for loading, or at Bristol or Philadelphia, more than three days, except Sundays; the Company was to pay $2 50 per diem demurrage, to be estimated from the time of reporting at the respective agencies. This was signed by Newbold as president, and was under the seal of the company.

They then proved by Taylor, that after the sale plaintiff called on him; that witness said he did not acknowledge any claim to the boats

by McKee; various offers were made; finally McKee acceded to an offer, which was to deliver him the boats on the terms he had agreed with the company, giving him the credits he had on their books, and $25 additional; he made no demand for other debts due him by the company; nor did he use the word demurrage; after this no other demand was made before suit. Plaintiff then proved articles signed by himself and the company's agent, dated August 11th, 1841; these were identical with that of August 5th, excepting that one-fifth of the freight money was to be left subject to forfeiture; and in addition, there were the names of the seven boats annexed, with his own opposite, marked as owner. He then proved very great delays had taken place in consequence of the company not furnishing the necessary money; that some boats made but one trip, &c.; and that they often lay ten or fifteen days for want of money to pay the tolls. A witness, agent of the company, then produced a book, showing the trips, time of arrival, &c., of the boats; he made the entries from letters from the agent at the place of loading, and the manifests brought down by the boatmen, delivered to him by the agent, and the toll receipts on the canal. It was objected to as not the best ~evidence, and that the documents from which they were made should have been produced. The court said it was in accordance with the trade and business, and therefore primary evidence. This was the 2d exception, the 1st relied on here. He then stated from the book the number of trips, and the credits for freight. It was a little over $1000; he said there was no demurrage in 1841.

Plaintiff then proved there was a verbal agreement between himself and Newbold the president, in the spring of 1842, in consequence of the company being unable to pay the freight; that that and the demurrage at that time or hereafter becoming due, should go off the price of the boats. This offer was objected to, because Newbold had not authority to make it, and because it varied the written contract, and constitutes the 3d exception. The demurrage never was settled by the company.

His honour, Burnside, P. J., charged the jury that this was not a lease, but a conditional sale, to be transferred when the payments were made, and not fraudulent, as possession was delivered. Unless the price was fully paid, the creditors of the company had a right to levy and sell their interest to which the purchaser succeeded; that the purchase and refusal to recognise any title was evidence of a conversion.

As to the demurrage, after cautioning them as to the evidence of an agreement to credit it on the boat, he told them plaintiff was entitled to recover to the extent he had paid on the boat. This was not a case

for vindictive damages; but their amount was for the jury; an injury beyond the mere value of the property being frequently a fair subject of compensation. The verdict was for $3050.

The exceptions to the charge were as to the evidence of conversion. 2d. In not charging that no title passed till payment and transfer, according to the agreements. 3d. In charging, recovery could be had to the extent of the payments. 4th. As to their right to give damages beyond the value of the property.

*Ross* and *Fox*, for plaintiff in error.—By the contract, the property remained in the company until the payments were completed by the $10 per trip retained, and a transfer made; the object was to secure the service of the boats and men for two years. The case was in effect decided by Lehigh *v.* Field, 8 Watts & Serg. 232, where, under a similar agreement, it is said no title passed. But this action is founded on property, the full and perfect right to which is necessary to its maintenance, 2 Sel. N. P. 520; 13 East, 614, 522; 2 Maul. & Sel. 397, (Busk *v.* Davis); M‹Donald *v.* Hewit, 15 Johns. 349. If any act remains to be done, trover will not lie, was said in this case, and Rapeljie *v.* Smith, 6 Cowen, 250; 2 Bl. Com. 448; Ross on Vend. 28; Shipley *v.* Davis, 5 Taunt. 621. Here the company had the right to declare all the payments forfeited, and the condition of a transfer shows the title was intended to remain. Nor could he sue thus for a partial right; if he was entitled to any part, it was to the whole, 1 T. R. 658; 1 East, 363. The question of demurrage had not been settled by the company; nor had the president a right to allow credit for another debt; it was beyond his authority, Ridgway *v.* Farmers' Bank, 12 Serg. & Rawle, 263; 1 Rawle, 230. The evidence showed, after all the evidence of conversion which was relied on, that plaintiff assented to the retention of the boat, and brought suit without further demand. The rule as to damages is found in Taylor *v.* Morgan, 3 Watts, 333; and the court misled the jury. The book was but a copy; and corporation books are not evidence against strangers, 12 Serg. & Rawle, 49; Cooper *v.* Maule, 4 Yeates, 34. [*Rogers*, J.— Are you not in the situation of the corporation?]

*Gibbons*, contrà.—There is a marked difference between the articles in this case and in that in 8 Watts & Serg. 232; there is no right reserved to forfeit the $10 paid on account of the purchase money, but merely the per centage on the freight. Had we entirely paid for the boats, it clearly would not be considered executory in favour of the party in default for not transferring; the only question then is, whether we had paid; and the jury found we had; was the evidence proper? It was

not to alter a written contract, but to prove another, or merely as notice of our intent to do what the company could not have prevented—give notice of our design to credit our purchase account with other debts due us by the same parties, under the same agreement, Heines v. Barnitz, 8 Watts, 39; and for this the evidence was competent, Bremer v. Howson, 11 Serg. & Rawle, 352. That we had clear right, having done all on our part, and having possession also, and nothing but a formal transfer being required, is shown in Scott v. Wells, 6 Watts & Serg. 366.

*March* 31. SERGEANT, J.—In the case of The Lehigh Company v. Field, 8 Watts & Serg. 232, the question arose upon a contract made by that company for the boating of coal, similar in substance to the present : and it w s there held that the agreement was only executory, that the master had possession of the boat but as servant of the company, the property remaining in them until the price was paid. This being the law, it is clear that in the present instance the boat remained the property of the Sugar-Loaf Company, and the party purchasing from them, unless by the retention of freight, demurrage, or otherwise, the price agreed upon by the contract had been paid. The plaintiff alleges that this was the case : the defendants deny it, and the court in one part of their charge leave this to the jury. But in a subsequent part of the charge the court say the plaintiff had rights to the extent he had paid, and could recover in this action to the extent of his payments, in pursuance of his contract. In this, we think there was error. The action was trover and conversion, and in that action it is essential for the plaintiff to show that the right of property was in him at the commencement of the action : and if he had not then paid up the whole purchase money, he had no right of property in the boat, nor was the company bound to transfer it to him. His remedy would be against the Sugar-Loaf Company, for failure on their contract, if that had been the fact.

The case does not resemble those to which the court below compared it, of a part owner suing in trover, or a tenant in common, for it could not be pretended that under the contract the plaintiff was to be part owner or tenant in common with the company, either in proportion to the amount of his payments, or otherwise. Under the agreement the whole property was to remain in the company till he paid up the price, and when that was done, the whole property in the boats was to be transferred to the plaintiff; and whether the price was paid was a fact to be decided by the evidence of the amount of freight retained, and of the alleged agreement that the demurrage and other

freight should be credited to the plaintiff, as part payment, and what their amount was. If these equalled the price of the boat, the credit should be for the value of the boat and interest. This would cover, in a case like the present, all the damages the plaintiff is entitled to. There appears to be nothing in the conduct of the defendant vindictive or oppressive, and the jury would have no right to give damages of a speculative character, for interruption of business, loss of profits, or the like, under the circumstances of this case and in this kind of action.

The bills of exception relied on are the second and third. The second bill was to entries in a book kept by Russel West, of the loading of boats at Mauch-Chunk, from letters by the agent of the Sugar-Loaf Company, who attended to the loading, manifests brought down by the boatmen, and toll receipts from the two canals. This was objected to by the defendant, because not the best evidence, but the documents themselves should be produced. The court admitted it as in accordance with trade and business. If, as it seems, the witness was agent of the Sugar-Loaf Company, the books would be evidence against them, and as the defendants claimed under them, it would also on that ground be evidence against the defendants.

The third bill was to the evidence of Robert McKee, of the agreement of Newbold, the president of the Sugar-Loaf Company, with the plaintiff, as to the demurrage and freight, made in the spring of 1842. Whether the evidence offered was admisssible or not, would depend upon whether Mr. Newbold was acting within the scope of his authority. The charter and regulations of the company are not shown, nor is there any evidence as to the duty or power of the president of a coal company, or what authority he usually exercised. We think some evidence on this subject ought to be given to lay a ground for admitting his acts or declarations as obligatory on the company: and as this cause must go back for another trial, there may be something shown on the subject.

Judgment reversed, and a venire facias de novo awarded.